**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JAMES D. DRISCOLL,

     Plaintiff,

v.                                    Civ. No. 19-527 JCH/KK

JESUS MANUEL CASTELLANOS
*et al.*,

     Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION TO COMPEL AND MOTION TO QUASH

THIS MATTER is before the Court on: (1) Plaintiff's Motion to Compel Defendant FedEx Ground Package System's Responses to Plaintiff's Fifth Set of Interrogatories and Fourth Set of Requests for Production (Doc. 115) ("Motion to Compel"), filed November 13, 2020; and, (2) Defendants' Motion to Quash Subpoena *Duces Tecum* or, in the Alternative, to Enter a Protective Order (Doc. 116) ("Motion to Quash"), filed November 20, 2020. The Court, having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully advised, FINDS that both Motions are well-taken in part and should be GRANTED IN PART and DENIED IN PART as described below.

### I. Introduction

This diversity case concerns an accident in which Defendant Jesus Manuel Castellanos allegedly struck and injured Plaintiff James D. Driscoll, a pedestrian, while backing up a delivery truck. (Doc. 16 at 1.) At the time, Defendant Castellanos was delivering packages for Defendant FedEx Ground Package System, Inc. ("FedEx Ground") pursuant to a contract between FedEx Ground and Defendant Castellanos' employer, Defendant Eldridge Distribution, Inc. ("Eldridge").

(*Id.*)  In his First Amended Civil Complaint for Jury Trial, Plaintiff asserts claims against all Defendants for negligence and negligence *per se*, and against Defendants Eldridge, FedEx Ground, and FedEx Corporate Services, Inc. for negligent entrustment, hiring, retention, training, and supervision.  (Doc. 49.)

In his Motion to Compel, Plaintiff seeks to compel FedEx Ground to respond to his Fifth Set of Interrogatories, Interrogatories Nos. 1-2, and Fourth Set of Requests for Production, Requests Nos. 1-7, pursuant to Federal Rule of Civil Procedure 37.[1]  (Doc. 115.)  FedEx Ground filed a response in opposition to Plaintiff's Motion on November 27, 2020, and Plaintiff filed a reply in support of it on December 11, 2020.  (Docs. 117, 125.)

In their Motion to Quash, Defendants seek an order quashing the Subpoena *Duces Tecum* (Doc. 113 at 3-6) ("Subpoena") Plaintiff served on Jeff McDonald of McDonald Investigation & Consulting, or in the alternative a protective order barring enforcement of the Subpoena, pursuant to Federal Rules of Civil Procedure 26 and 45.  (Doc. 116 at 1, 9.) Plaintiff filed a response in opposition to Defendants' Motion on November 30, 2020, and Defendants filed a reply in support of it on December 14, 2020. (Docs. 118, 126.)

## II.  Legal Standards

Federal Rule of Civil Procedure 26 permits parties to

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

---

[1] As FedEx Ground points out, (Doc. 117 at 3 n.2), Plaintiff's Motion to Compel lists the discovery requests at issue inconsistently.  (*Compare* Doc. 115 at 1 (listing "Plaintiff's Fifth Set of Interrogatories, Nos. 1-3 and Plaintiff's Fourth Set of Requests for Production, Nos. 4-7") *with id.* at 10 (listing "Plaintiff's Third Set of Interrogatories, Nos. 3-9, and Plaintiff's Second Set of Requests for Production, Nos. 1-4").) However, the body of the Motion plainly indicates the discovery requests then in dispute, *i.e.*, Plaintiff's Fifth Set of Interrogatories, Interrogatories Nos. 1-3 and Fourth Set of Requests for Production, Requests Nos. 1-7.  (*See generally id.*)  And, Plaintiff's reply in support of the Motion indicates that the Motion is now moot with respect to his Fifth Set of Interrogatories, Interrogatory No. 3, because FedEx Ground "has removed its objections to this interrogatory" and produced all responsive information, and Plaintiff "agrees this request has been complied with." (Doc. 125 at 4.)

> importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  While "relevancy in discovery is broader than that required for admissibility at trial, the object of inquiry must have some evidentiary value" to be discoverable.  *Dorato v. Smith*, 163 F. Supp. 3d 837, 865–66 (D.N.M. 2015) (quotation marks omitted).

Federal Rule of Civil Procedure 33 permits a party to serve interrogatories on any other party regarding "any matter that may be inquired into under Rule 26(b)."  Fed. R. Civ. P. 33(a)(2).  Likewise, Federal Rule of Civil Procedure 34 permits a party to serve on any other party requests to produce documents, electronically stored information, and tangible items "within the scope of Rule 26(b)."  Fed. R. Civ. P. 34(a)(1).  Federal Rule of Civil Procedure 37 authorizes a party to move for an order compelling an answer or production if another party "fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

Rule 45 governs subpoenas issued to nonparties.  Fed. R. Civ. P. 45; *see also Simon v. Taylor*, Civ. No. 12-0096 JB/WPL, 2014 WL 6633917, at *14 (D.N.M. Nov. 18, 2014) ("Discovery of non-parties must be conducted by subpoena pursuant to [Rule] 45.").  "A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26."  *Quarrie v. Wells*, Civ. No. 17-350 MV/GBW, 2020 WL 4934280, at *2 (D.N.M. Aug. 24, 2020).  Also, the "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  Pursuant to Rule 45, "[o]n timely motion, the court for the district where

compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies," or one which "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).

Finally, under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," *inter alia*, by forbidding discovery, specifying its terms, or limiting its scope.  Fed. R. Civ. P. 26(c)(1).  "If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery."  Fed. R. Civ. P. 26(c)(2).

### III.  Analysis

The Motions before the Court raise two distinct issues.  The first issue concerns the discoverability of documents and information regarding prior accidents.  Plaintiff raises this issue in the portion of his Motion to Compel regarding Interrogatory No. 2 and Requests Nos. 1-3.  (Doc. 115 at 4-7.)  These requests, which Plaintiff revised in light of the Court's July 1, 2020 Order Denying Plaintiff's Motion to Compel (Doc. 91), seek documents and information regarding a limited category of prior accidents that involved vehicles operating under FedEx Ground's DOT number.  (Doc. 115-1 at 1-3; Doc. 115-2 at 2.)

The second issue, which is raised in both parties' Motions, concerns the discoverability of surveillance materials and information.  In his Motion to Compel, Plaintiff asks the Court to compel FedEx Ground to respond to Interrogatory No. 1 and Requests Nos. 4-7, which seek information and materials regarding surveillance of Plaintiff and his family conducted on FedEx Ground's behalf.  (Doc. 115 at 8-10; *see* Doc. 115-1 at 4-6; Doc. 115-2 at 1.)  And, in their Motion to Quash, Defendants ask the Court to bar enforcement of the Subpoena Plaintiff served on

investigator Jeff McDonald, which also seeks surveillance information and materials.  (Doc. 116; *see* Doc. 113 at 4-6.)  The Court will address each of these issues in turn.

## A.       Discoverability of Documents and Information Regarding Prior Accidents

The parties first dispute the scope of discoverability of documents and information about prior accidents that involved vehicles operating under FedEx Ground's DOT number.  As this Court has previously observed, "evidence of prior accidents may be admissible in a motor vehicle accident case to support both liability (duty) and punitive damages."  (Doc. 91 at 4 (quoting *Leon v. FedEx Ground Package Sys., Inc.*, 313 F.R.D. 615, 639–40 (D.N.M. 2016) (quotation marks omitted).)  However, for such "highly prejudicial" evidence to be admissible, the prior accidents must be "substantially similar to the accident" at issue in the case at bar.[2]  *Leon*, 313 F.R.D. at 644-45.

In Interrogatory No. 2, Plaintiff asks FedEx Ground to identify other incidents in which "delivery vans and box trucks[] operating under FedEx Ground's DOT number have struck a pedestrian in a reversing or backing maneuver," from April 21, 2016 to April 21, 2019.  (Doc. 115-2 at 2.)  For each such incident, Plaintiff requests the date, location, driver name, person(s) struck, injured, or killed, case caption, and whether the accident was deemed preventable.  (*Id.*)  In Requests Nos. 1-3, Plaintiff seeks various documents regarding incidents responsive to Interrogatory No. 2, *i.e.*, "the crash report, any additional law enforcement or government reports, submissions to the DOT, incident reports, statements regarding the incident, scene photos,

---

[2] The substantial similarity standard discussed in *Leon* applies to admissibility rather than discoverability, and information need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1). However, the relative similarity of prior incidents to the accident at issue is also pertinent to whether information about the prior incidents is relevant and proportional to the needs of the case. *Id.*; *see Dorato*, 163 F. Supp. 3d at 865–66 (though "relevancy in discovery is broader than that required for admissibility at trial, the object of inquiry must have some evidentiary value" to be discoverable) (quotation marks omitted).

preventability determinations," "printouts of any internal listing or categorization of the incident," "documents created and maintained under FMCSR 390.15," and "information and documents contained in the Accident Register."  (Doc. 115-1 at 1-3.)

FedEx Ground objected to these requests on the bases that they are vague, overbroad, and unduly burdensome, seek information and documents about incidents that are not substantially similar to the accident at issue and are thus irrelevant and disproportionate to the needs of the case, are duplicative of Interrogatory No. 3 of Plaintiff's Third Set of Interrogatories,[3] and seek "personally identifying information" about nonparties.  (Doc. 115-1 at 1-4; Doc. 115-2 at 2-3.)

Notwithstanding its objections, FedEx Ground concedes that some information regarding substantially similar prior accidents is discoverable, and, after counsel conferred, provided a partial answer to Interrogatory No. 2.  (Doc. 115-2 at 3-4; Doc. 117 at 6.)  However, FedEx Ground disagrees with Plaintiff regarding how narrowly the category of substantially similar accidents should be defined.  Thus, it limited its answer to accidents that not only meet the criteria specified in the interrogatory, but also (a) were deemed preventable, (b) involved vehicles not equipped with a backing camera, (c) occurred in a parking lot, and (d) injured a pedestrian.  (Doc. 115-2 at 3-4.)

The Court finds FedEx Ground's first limitation to be appropriate.  If neither FedEx Ground nor a governmental agency such as the Federal Motor Carrier Safety Administration deemed an accident to be preventable, that accident is unlikely to be either substantially similar to the "preventable" accident at issue here, or relevant to liability or punitive damages.  (Doc. 117 at 7.)  As such, discovery about accidents not deemed preventable would be irrelevant and

---

[3] This objection is wholly groundless.  Though they concern the same subject matter, Interrogatory No. 2 of Plaintiff's Fifth Set of Interrogatories and Requests Nos. 1-3 of his Fourth Set of Requests for Production differ substantially from Interrogatory No. 3 of his Third Set of Interrogatories.  (*Compare* Doc. 115-1 at 1-3 *and* Doc. 115-2 at 2 *with* Doc. 115-7 at 4.)

disproportionate to the needs of the case under Rule 26(b). Fed. R. Civ. P. 26(b)(1); *Dorato*, 163 F. Supp. 3d at 865–66.

However, the Court finds that FedEx Ground has otherwise defined the category of substantially similar accidents too narrowly. First, FedEx Ground does not dispute that the truck at issue in this case was equipped with neither a backup camera nor a backup alarm. (Doc. 117 at 8.) Nevertheless, FedEx Ground appears to have omitted responsive accidents involving vehicles not equipped with a backup alarm from its answer to Interrogatory No. 2. (Doc. 115-2 at 3-4; Doc. 117 at 7.) The Court finds that this category of accidents is sufficiently similar to the accident at issue to be discoverable.[4] Fed. R. Civ. P. 26(b)(1). Thus, the Court will order FedEx Ground to supplement its answer to Interrogatory No. 2 to include responsive accidents involving vehicles not equipped with a backup alarm.[5]

Next, the Court finds that FedEx Ground defined the category of substantially similar accidents too narrowly in restricting its answer to Interrogatory No. 2 to responsive accidents that occurred in a parking lot and injured a pedestrian. As to location, although the accident at issue occurred in a parking lot, the Court finds that any accident involving a delivery van or box truck striking a pedestrian while backing up is likely to have occurred somewhere similar in terms of vehicle speed and the presence of pedestrians, such as a driveway, residential area, or loading zone.

---

[4] However, the Court recognizes the possibility that none of the delivery vans and box trucks operating under FedEx Ground's DOT number have backup alarms, which would bring every otherwise responsive accident within the scope of this interrogatory and render it and the document requests related to it unduly burdensome. In that event, FedEx Ground need not include all otherwise responsive accidents involving vehicles lacking a backup alarm in its supplemental answer, but may instead expressly state in its answer that none of the delivery vans and box trucks operating under its DOT number are equipped with backup alarms.

[5] Plaintiff suggests that responsive accidents involving vehicles in which the backup camera or alarm was "inoperable," turned off, or not used are also substantially similar to the accident at issue here, and that FedEx Ground improperly omitted these types of accidents from its answer. (Doc. 115 at 6; Doc. 125 at 3-4; *see* Doc. 115-2 at 3-4.) However, the Court finds that the information and documents Plaintiff has requested are not discoverable as to these types of accidents because the burden it would impose on FedEx Ground to produce the requested information and documents significantly outweighs the likely benefit of such production. Fed. R. Civ. P. 26(b)(1).

The Court suspects that it is vanishingly rare for a delivery truck to back up into a pedestrian, for example, on a freeway.  The Court further finds that virtually any accident in which a delivery van or box truck strikes a pedestrian is likely to injure the pedestrian, even if, by serendipity, it occasionally does not.  The Court will therefore order FedEx Ground to supplement its answer to Interrogatory No. 2 to include responsive accidents regardless of location and regardless of whether a pedestrian was injured.

In addition, the Court notes that, in its answer to Interrogatory No. 2, FedEx Ground omitted some of the information requested about the accidents it disclosed.  Specifically, FedEx Ground omitted the driver's name, the names of persons injured, struck, or killed, and the caption of any subsequent litigation.  (Doc. 115-2 at 2-4.)  The Court will not compel FedEx Ground to provide drivers' and injured persons' names in its answer, because this information is not relevant and proportional to the needs of the case and would identify nonparties.  However, the Court will compel FedEx Ground to provide the case caption of any subsequent litigation arising out of responsive accidents.

In sum, the Court will compel FedEx Ground to answer Interrogatory No. 2, but will permit it to limit its answer to information about responsive accidents that:  (a) a governmental agency or FedEx Ground deemed preventable; and, (b) involved a vehicle not equipped with a backup camera or a vehicle not equipped with a backup alarm.  Further, the Court will compel FedEx Ground to provide not only the date, location, and a general description of accidents responsive to Interrogatory No. 2 as narrowed herein, but also the case caption of any subsequent litigation arising out of such accidents.

The Court will also order FedEx Ground to respond to Requests Nos. 1 through 3 in part by producing the following documents and information regarding accidents responsive to

Interrogatory No. 2 as narrowed herein: "law enforcement or government reports," DOT submissions, "preventability determinations," and information and documents regarding responsive accidents that are required by 49 C.F.R. § 390.15 to be included in the Accident Register, except for drivers' names and accident reports required by insurers.[6] (Doc. 115-1 at 1-3.) The Court finds that these documents are relevant and proportional to the needs of the case in light of the factors listed in Rule 26(b). Fed. R. Civ. P. 26(b)(1). In all other respects, Requests Nos. 1 through 3 are vague, overbroad, and seek irrelevant and disproportionate documents, and the Court will deny Plaintiff's Motion to Compel FedEx Ground to respond to them.

**B.      Discoverability of Surveillance Materials and Information**

The Court next turns to the parties' dueling Motions regarding Plaintiff's attempts to discover surveillance materials and information. First, in his Motion to Compel, Plaintiff seeks to compel FedEx Ground to respond to Interrogatory No. 1 of his Fifth Set of Interrogatories and Requests Nos. 4-7 of his Fourth Set of Requests for Production, which seek information and documents regarding any surveillance of Plaintiff or his family conducted on FedEx Ground's behalf. (Doc. 115-1 at 4-6; Doc. 115-2 at 1.) FedEx Ground objected to these requests on several grounds, including the attorney-client privilege and the attorney work-product doctrine, and declined to produce a privilege log or any responsive documents or information. (Doc. 115-1 at 4-7; Doc. 115-2 at 1-2.)

---

[6] To the extent that any non-public records to be produced in response to Requests Nos. 1 through 3 contain any information that would identify a nonparty or any non-public information about a nonparty, FedEx Ground may redact that information before producing the documents to preserve the nonparty's privacy. FedEx Ground may redact such information from non-public records even if it may also be found in a public record. Information FedEx Ground may redact includes but is not limited to the nonparty's name, contact information, date of birth, Social Security number, driver's license number, government identification number, insurance records and information, medical records and information, and employment records and information.

Defendants' Motion to Quash, in turn, concerns the Subpoena Plaintiff served on investigator Jeff McDonald, setting Mr. McDonald's deposition for December 4, 2020, and commanding him to produce five categories of surveillance materials.[7]  (Doc. 113 at 3, 6; Doc. 116.)  In their Motion, Defendants argue that information and materials about Mr. McDonald's surveillance activities, if any, are irrelevant because they have not disclosed Mr. McDonald as a witness, and that the attorney-client privilege and attorney work-product doctrine bar Plaintiff from deposing Mr. McDonald and obtaining the requested documents.  (Doc. 116 at 3, 5-8.)

Before addressing the substantive issue of whether and to what extent the requested surveillance materials and information are discoverable, the Court must address two preliminary arguments the parties have made.  First, Plaintiff argues that Defendants have waived any privilege protecting the surveillance materials and information he has requested by failing to produce a privilege log.  (Doc. 118 at 4-5.)  Plaintiff is correct that, if a party fails to produce a privilege log or produces an inadequate log, "courts *may* deem the privilege waived." *Kannaday v. Ball*, 292 F.R.D. 640, 646 (D. Kan. 2013) (emphasis added).   However, "[a] document-by-document privilege log is not always necessary when a party has, in good faith, asserted other non-privilege objections to the discoverability of a whole range of materials."  *In re Joy Glob., Inc.*, No. CIV. 01-039-LPS, 2008 WL 2435552, at *4 (D. Del. June 16, 2008).  For example, "when there is an objection to the scope of the request, a court should rule on the objection[] first," and, if it overrules the objection should then give the objecting party an opportunity to produce a privilege log.

---

[7] The categories of surveillance materials listed in the Subpoena are:  (1) "[p]hotographs, videos, reports, slides or motion pictures depicting Plaintiff or any member of the Driscoll family's activities"; (2) "[d]ash cam footage relating to the Plaintiff and/or family"; (3) "[s]tatements obtained from witnesses regarding the Plaintiff and/or family"; (4) "[e]vidence collected regarding the subject incident, Plaintiff and/or family"; and, (5) "[c]ommunications and correspondence between McDonald Investigation & Consulting and Wheeler Trigg O'Donnell, LLP employees relating to the subject incident, Plaintiff and/or family."  (Doc. 113 at 6.)  The docket reflects that defense counsel work for Wheeler Trigg O'Donnell, LLP.

*Youssef v. Bank of Am.*, No. CV 12-5364-GW (AGR), 2013 WL 12142563, at *4 (C.D. Cal. Sept. 24, 2013). "Otherwise, any objection to the scope of a discovery demand would be rendered moot because interposing that objection would trigger the very burdensome obligation to prepare a privilege log that the objection would be intended to avoid." *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017). Also, there is no need for a privilege log when a request "only appl[ies] to materials that would be privileged or work product." *Cooper v. Old Dominion Freight Line, Inc.*, No. 09-CV-2441 JAR, 2011 WL 251447, at *10 (D. Kan. Jan. 25, 2011).

Here, Defendants objected to the production of the surveillance materials and information Plaintiff seeks based not only on the attorney-client privilege and attorney work-product doctrine, but also on overbreadth, undue burden, and lack of relevance and proportionality. (*See, e.g.*, Doc. 115-1 at 5-7.) Additionally, and as further discussed below, by their very nature all of the surveillance materials Plaintiff seeks are work product. For these reasons, the Court declines to find that, by failing to submit a privilege log, Defendants waived the attorney-client privilege or attorney work-product doctrine with respect to the requested surveillance materials and information.

The second preliminary matter the Court must address is Defendants' argument that the surveillance materials and information Plaintiff seeks are not relevant or discoverable as to any investigator Defendants have not disclosed as a witness and whose evidence they intend to use, if at all, solely for impeachment.[8]  (Doc. 126 at 3-5.) In so arguing, Defendants appear to have mistakenly conflated their disclosure obligations with the scope of discovery. Defendants are

_____

[8] Mr. McDonald appears to fall into this category. (Doc. 126 at 3-5.) To date, Defendants have neither admitted nor denied that Mr. McDonald surveilled Plaintiff on their behalf. (*Id.*) However, the Court expects that Defendants would not have put themselves or their opponent to the expense of litigating a motion to quash if he did not.

correct that Rule 26(a) does not require them to *automatically disclose* pure impeachment evidence. *See* Fed. R. Civ. P. 26(a)(1)(A) ("[A] party must, without awaiting a discovery request," identify witnesses, documents, and tangible items it may use to support its claims or defenses, "unless the use would be solely for impeachment."). Nevertheless, such evidence is discoverable if it satisfies the requirements of Rule 26(b)(1) and is not otherwise privileged or protected. Fed. R. Civ. P. 26(b)(1). As one court explained, "Rule 26(a) is concerned with automatic disclosure of materials, not the scope of discovery." *Papadakis v. CSX Transp., Inc.*, 233 F.R.D. 227, 228 (D. Mass. 2006). Rather, "Rule 26(b) governs the scope of discovery and does not exempt impeachment materials." *Id.*; *see also Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006) ("No special status is given to impeachment evidence under Rule 26(b)(1)."). Thus, that Defendants may use an investigator's surveillance evidence solely for impeachment does not exempt that evidence from discovery.

Turning to the law governing the substantive issue at hand, *i.e.*, the discoverability of the surveillance materials and information Plaintiff has requested, "state law supplies the rules concerning attorney-client privilege in diversity cases" like this one. *Murphy v. Gorman*, 271 F.R.D. 296, 303 (D.N.M. 2010); *see Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998) ("[S]tate law supplies the rule of decision on privilege in diversity cases."). Under New Mexico law, the elements of the attorney-client privilege are:

> 1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client. A communication is "between privileged persons" when it is between the client and the client's lawyer or representative.

*Garner v. Ranka*, No. CV 18-181 MV/GBW, 2020 WL 601898, at *1 (D.N.M. Feb. 7, 2020) (citation and quotation marks omitted); *Am. Auto. Ins. Co. v. First Mercury Ins. Co.*, No. 1:13-CV-00439-MCA-LF, 2016 WL 7395219, at *2 (D.N.M. Oct. 22, 2016). "The party asserting the

attorney-client privilege bears the burden of demonstrating that it applies." *Murphy*, 271 F.R.D. at 304.

In *Sanchez v. Matta*, the court quoted a Second Circuit decision to the effect that a lawyer's "communications with agents are protected if they are 'made in confidence for the purpose of obtaining legal advice from the lawyer.'"  229 F.R.D. 649, 660 (D.N.M. 2004) (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)). However, the holding *Sanchez* quoted clearly pertains only to a lawyer's communications with an agent about a client's confidential communications. *See Kovel*, 296 F.2d at 922-23.  This accords with the court's observation in *J.M. through Foley v. New Mexico Department of Health* to the effect that "[c]onversations the attorney has with his investigator are not privileged *unless they would reveal a communication of the client*."  No. CIV 07-604 RB/ACT, 2009 WL 10708126, at \*5 (D.N.M. Mar. 13, 2009) (emphasis added); *Alexander v. F.B.I.*, 192 F.R.D. 12, 17 (D.D.C. 2000) (emphasis added).

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by [the] uniform federal standard" in Rule 26(b)(3).  *Frontier Ref., Inc.*, 136 F.3d at 702 n.10; *see also Garner*, 2020 WL 601898 at \*2 ("Distinct from attorney-client privilege is the work-product doctrine, which is governed by Federal Rule of Civil Procedure 26(b)(3)."); *Murphy*, 271 F.R.D. at 310 ("In diversity cases, [R]ule 26(b)(3) . . . governs work-product issues.").  Under Rule 26(b)(3), "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  However, a party may discover such materials if they are "otherwise discoverable under Rule 26(b)(1)" and "the party shows that it has substantial need for

the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*

If a court orders production of trial preparation materials under Rule 26(b)(3), "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B). Such opinion work product "is entitled to near absolute protection."  *Roa v. Tetrick*, No. 1:13-CV-379, 2014 WL 695961, at *5 (S.D. Ohio Feb. 24, 2014).  However, "[b]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product."  *Am. Auto. Ins. Co.*, 2016 WL 7395219 at *3.  As with the attorney-client privilege, the party asserting work-product protection has the burden of demonstrating that it applies.  *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984); *Am. Auto. Ins. Co.*, 2016 WL 7395219 at *3; *JM through Foley*, 2009 WL 10708126 at *4.

Federal courts have generated a substantial body of law applying Rule 26(b)(3) to surveillance materials.  Such materials clearly fall "within the definition of work product since they are tangible and were prepared in anticipation of litigation by or for a party to the litigation."  *Ward v. CSX Transp., Inc.*, 161 F.R.D. 38, 40 (E.D.N.C. 1995); *see also, e.g.*, *Loper v. Rapp Hydema U.S., Inc.*, No. 1:09-CV-692-LG-RHW, 2011 WL 13353008, at *1 (S.D. Miss. Feb. 11, 2011) ("Surveillance evidence is protected by the work-product doctrine" because it "is gathered in anticipation of litigation."); *Tripp v. Severe*, No. CIV.A.L-99-1478, 2000 WL 708807, at *1 n.1 (D. Md. Feb. 8, 2000) ("[S]urveillance tapes are clearly work product since they were gathered in anticipation of litigation by a party or the party's representative."); *Smith v. Diamond Offshore*

*Drilling, Inc.*, 168 F.R.D. 582, 586 (S.D. Tex. 1996) ("[S]urveillance evidence is gathered in anticipation of litigation and thus is generally protected as work product.").

Nevertheless, surveillance photos and videos, in particular, "do not contain the mental impressions, legal theories or conclusions" of a party's counsel or representative, and an opposing party can therefore overcome the qualified privilege protecting these items by showing a substantial need for them and inability to obtain their substantial equivalent elsewhere. *Martino v. Baker*, 179 F.R.D. 588, 590 (D. Colo. 1998); Fed. R. Civ. P. 26(b)(3)(A). Some courts have required the production of surveillance photos and videos even when the surveilling party does not intend to use the evidence for any purpose at trial. *See, e.g.*, *Dunston v. Cecil Huang*, No. 1:09CV1369 (TSE/JFA), 2010 WL 11698098, at *1–2 (E.D. Va. May 5, 2010); *Riley v. Union Pac. R.R. Co.*, No. CIV-09-155-KEW, 2010 WL 11700897, at *1 (E.D. Okla. Apr. 23, 2010).

However, based on this Court's survey, courts more commonly distinguish between "evidentiary" and "non-evidentiary" surveillance photos and videos, finding the former, but not the latter, to be discoverable. *See, e.g.*, *Roach v. Hughes*, No. 4:13CV-00136-JHM, 2015 WL 13022290, at *3–4 (W.D. Ky. Apr. 14, 2015); *Harrington v. Atl. Sounding Co.*, No. CV-06-2900 NG VVP, 2011 WL 6945185, at *2 (E.D.N.Y. Dec. 30, 2011); *Tripp*, 2000 WL 708807 at *1 n.1; *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 154 (S.D. Ind. 1993). Courts so holding generally reason

> that a plaintiff alleging claims for personal injury has a substantial need for surveillance evidence in preparing his case for trial, due to the relevance and importance of such evidence, and the substantial impact it may have at trial. Further, it is impossible to procure the substantial equivalent of such evidence without undue hardship, as videotape[s and photos] fix[] information available at a particular time and a particular place under particular circumstances, and therefore cannot be duplicated.

*Gutshall v. New Prime, Inc.*, 196 F.R.D. 43, 46 (W.D. Va. 2000) (quotation marks omitted).

The opposing party's need to examine surveillance videos and photos for "possible alteration or distortion . . . has been the primary basis for ordering" pretrial production of these materials. *Fisher*, 152 F.R.D. at 154.

> Film and video tape are extraordinarily manipulable media. . . . [T]he camera may be an instrument of deception. It can be misused. Distances may be minimized or exaggerated. . . .  Action may be slowed down or speeded up. The editing and splicing of films may change the chronology of events. An emergency situation may be made to appear commonplace. That which has occurred once, can be described as an example of an event which occurs frequently.  Thus, that which purports to be a mean[s] to reach the truth may be distorted, misleading, and false.

*Papadakis*, 233 F.R.D. at 229 (ellipses omitted); *see also Roa*, 2014 WL 695961 at *4 ("Like video evidence, photographic or audio evidence is potentially subject to distortion or manipulation and may be misleading depending on the context in which it was produced or presented.").  Courts also note the "highly persuasive nature" of such evidence, *Harrington*, 2011 WL 6945185 at *1, and the fact that it "can be both substantive evidence of [a plaintiff's] physical condition and impeachment evidence." *Loper*, 2011 WL 13353008 at *1; *see Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517-18 (5th Cir. 1993) (surveillance tape should have been disclosed before trial because it was at least in part substantive evidence of plaintiff's damages).

Courts ordering the production of surveillance photos and videos have "reached various outcomes concerning the . . . timing of the production of these types of materials." *Gardner v. Norfolk S. Corp.*, 299 F.R.D. 434, 436 (D.N.J. 2014).  Many courts have permitted the surveilling party to delay production of such evidence until after the surveilled party's deposition.[9] *See, e.g., Martino*, 179 F.R.D. at 590; *Ward*, 161 F.R.D. at 40–41; *Boyle v. CSX Transp., Inc.*, 142 F.R.D.

---

[9] Even these courts have differed, however, regarding precisely when after the surveilled party's deposition surveillance evidence should be produced. *Compare, e.g., Boyle v. CSX Transp., Inc.*, 142 F.R.D. 435, 437 (S.D.W. Va. 1992) (surveillance evidence should be produced "at a time when opportunity exists to test, through further discovery, the manner and means by which the surveillance was conducted") *with Snead v. Am. Exp.-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 151 (E.D. Pa. 1973) (surveillance evidence should be produced "as close to the time of trial as possible, but before the final pre-trial conference").

435, 437 (S.D.W. Va. 1992); *Snead v. Am. Exp.-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 151 (E.D. Pa. 1973). The purpose of this procedure is to balance the surveilling party's need to preserve the impeachment value of the surveillance evidence, on the one hand, with the surveilled party's need to timely review the evidence for authenticity, on the other. *Liggins v. Mainstream Transportation, Inc.*, No. 2:13-CV-2533-SHM-DKV, 2013 WL 12149652, at *3 (W.D. Tenn. Nov. 13, 2013); *Harrington*, 2011 WL 6945185 at *1; *Loper*, 2011 WL 13353008, at *1; *Martino*, 179 F.R.D. at 590. Delaying production of surveillance evidence until after the surveilled party's deposition

> preserves the impeachment value of the surveillance by requiring the [surveilled] plaintiff to commit by deposition to a description of the scope of his injuries, but allows the plaintiff sufficient time before trial to evaluate the surveillance evidence to determine its authenticity and accuracy.

*Krekorian v. FMC Techs., Inc.*, No. CV 16-14170, 2017 WL 1284191, at *2–3 (E.D. La. Apr. 6, 2017) (citing *Smith*, 168 F.R.D. at 586).

Other courts, in contrast, have found surveillance evidence to be immediately discoverable, reasoning that, "[w]hile surprise has a healthy prophylactic effect against possible perjury, on balance, cases are more likely to be decided fairly on their merits if the parties are aware of all the evidence." *Gutshall,* 196 F.R.D. at 45; *Wegner v. Cliff Viessman, Inc.*, 153 F.R.D. 154, 159–60 (N.D. Iowa 1994). And at least one court has split the difference between these two camps, requiring the surveilling defendant to disclose the existence, form, and date of surveillance evidence before the plaintiff's deposition, but permitting the defendant to withhold "the actual surveillance evidence" until afterward.[10]  *Smith*, 168 F.R.D. at 587.

---

[10] The Court notes that a minority of courts have rejected requests to order the pretrial production of surveillance evidence altogether. *See, e.g., Lawton-Davis v. State Farm Mut. Auto. Ins. Co.*, No. 614CV1157ORL37GJK, 2015 WL 12839765, at *2 (M.D. Fla. Dec. 21, 2015)*; Marchello v. Chase Manhattan Auto Fin. Corp.*, 219 F.R.D. 217, 219–20 (D. Conn. 2004). The *Marchello* court gave several reasons for its ruling, including that the surveilled plaintiff "should know of his own activities and should be able to prepare his case without any immediate need for . . . surveillance tapes," that "[t]he surveillance films are not the only evidence of [the p]laintiff's injuries" and "do not depict [the p]laintiff's accident itself," and that the defendant should not be deprived of "the opportunity to provide evidence of [the] plaintiff engaging in activities which contradict his claimed injuries." 219 F.R.D. at 219-20. The

Turning to Plaintiff's Motion to Compel FedEx Ground to respond to his discovery requests regarding surveillance, Plaintiff first seeks to compel FedEx Ground to answer Interrogatory No. 1, which asks for the identities of those who surveilled Plaintiff or a family member on FedEx Ground's behalf, the dates, hours, and locations of the surveillance, the activities surveilled, the manner and amount of compensation for the surveillance, and "all reports, photographs, slides, videos, or motion pictures depicting" Plaintiff or a family member.  (Doc. 115-2 at 1.)  Relatedly, Plaintiff seeks to compel FedEx Ground to respond to his Requests Nos. 4 through 7, which ask for "all unedited videos and photographs of Plaintiff or captured in the surveillance of Plaintiff," "all time logs, bills or invoices relating to" the surveillance, and "all notes and memos from" and "contracts and communications with" McDonald Investigation and Consulting regarding Plaintiff.  (Doc. 115-1 at 4-6.)

FedEx Ground objected that these requests are overbroad and unduly burdensome and seek irrelevant and disproportionate information protected by the attorney-client privilege and attorney work-product doctrine.[11]  (Doc. 115-1 at 4-7; Doc. 115-2 at 1-2.)  FedEx Ground did not produce a privilege log or any documents or information in response to these requests.  (*See generally id.*) However, it did offer a general affirmation that it would "produce responsive documentation and information to Plaintiff, subject to the attorney work product doctrine, the Federal Rules of Civil Procedure, any applicable privileges, and in accordance with any scheduling order entered by this

---

court deemed it sufficient for the plaintiff to inspect the defendant's surveillance films for authenticity at trial, should the defendant use them.  *Id.* at 220.  In so holding, however, the *Marchello* court addressed neither the defendant's ability to preserve the impeachment value of surveillance evidence by deposing the plaintiff before producing it, nor the difficulty of effectively challenging distorted or altered evidence disclosed for the first time in the midst of trial.  *See generally id.*

[11] FedEx Ground also objected to these requests on the grounds that they sought impeachment evidence before Plaintiff's deposition and information regarding consulting experts.  (Doc. 115-1 at 4-7.)  However, Plaintiff has now been deposed, (Doc. 115 at 9; Doc. 118 at 9), and FedEx Ground has failed to show that any of its investigators are experts.

Court."  (Doc. 115-1 at 4-6; Doc. 115-2 at 2.)  Moreover, pursuant to Rule 26(a), Defendants recently "identified four witnesses"—other than Mr. McDonald—who "have observed Plaintiff, videos and photos related thereto, and a corresponding surveillance log," and are "working with Plaintiff to schedule related, limited depositions, as appropriate."[12]  (Doc. 126 at 4 n.1.)

For the reasons explained below, the Court will compel FedEx Ground to answer the portions of Interrogatory No. 1 seeking identification of those who have surveilled Plaintiff on its behalf, the dates and locations of such surveillance, and all "photographs, slides, videos, or motion pictures depicting Plaintiff," to the extent it has not already produced this information.  (Doc. 115-2 at 1.)  The Court will also compel FedEx Ground to respond to Request No. 4, which seeks "all unedited videos and photographs of Plaintiff or captured in the surveillance of Plaintiff."  (Doc. 115-1 at 4.)  First, the Court finds that these items and information are relevant and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  To effectively prepare for trial, Plaintiff needs to be able to examine any surveillance photos and videos FedEx Ground may use to impeach him for alterations or distortions and, if warranted, file an appropriate pre-trial motion in limine challenging their authenticity.  Basic information about these photos and videos provides necessary context for Plaintiff to assess their accuracy and reliability.  Also, surveillance photos and videos are likely to be probative of the effects of Plaintiff's injuries.

Next, FedEx Ground has failed to show, and the Court has no independent reason to believe, that disclosure of these items and information would reveal a defense client's confidential communications with his or her attorney or the attorney's agent.  *J.M. through Foley*, 2009 WL

---

[12] The Court does not condone agreements made between counsel to skirt the Court's discovery deadlines. Under the circumstances, defense counsel should honor any agreements made with Plaintiff's counsel regarding depositions to be taken after the close of formal discovery.  However, the Court will not mediate or resolve any disputes between the parties arising out of informal discovery they have agreed to take in violation of the Court's case management Orders, including any such depositions.

10708126 at *5.  Thus, at this juncture, the Court finds that the attorney-client privilege does not prevent their disclosure.  *See Murphy*, 271 F.R.D. at 304 (party asserting attorney-client privilege bears burden of demonstrating that it applies).

Finally, like the majority of federal courts to have addressed this issue, the Court finds that the surveillance evidence to be produced is discoverable notwithstanding its work-product status, because Plaintiff "has a substantial need for [it] in preparing his case for trial, due to [its] relevance and importance . . . , and the substantial impact it may have at trial."  *Gutshall*, 196 F.R.D. at 46.  In so holding, the Court is particularly persuaded by the unique nature of surveillance photos and videos, which are "highly persuasive," *Harrington*, 2011 WL 6945185 at *1, but also "extraordinarily manipulable." *Papadakis*, 233 F.R.D. at 229.  Further, it would be impossible for Plaintiff to obtain the substantial equivalent of such evidence elsewhere, because videos and photos "fix[] information available at a particular time and a particular place under particular circumstances, and therefore cannot be duplicated."  *Gutshall*, 196 F.R.D. at 46.

With respect to timing, the Court notes that FedEx Ground has already had the opportunity to preserve the impeachment value of its surveillance evidence by deposing Plaintiff.  (Doc. 115 at 9; Doc. 118 at 9.)  In addition, discovery in this matter closed on December 7, 2020, while Plaintiff's Motion to Compel was pending, and trial is set for May 2021.  (*See* Docs. 42, 97.)  Thus, to preserve Plaintiff's ability to prepare his case but avoid delaying trial, the Court will grant Plaintiff's Motion to Compel FedEx Ground to respond to Interrogatory No. 1 and Request No. 4 in part as follows.  The Court will order FedEx Ground, within twenty-one (21) days of entry of this Order, to identify any persons who have surveilled Plaintiff on its behalf, provide the dates and locations of such surveillance, and produce all unedited photographs and videos depicting Plaintiff or captured in surveillance of him.

However, the Court adds two caveats to this ruling.  First, if Defendants[13] timely affirm in writing that they will not use an investigator's testimony or materials for any purpose—including impeachment—at trial, then FedEx Ground need not produce any materials from or information regarding that investigator.  As just discussed, surveillance materials are work product, and Plaintiff lacks a substantial need for information about investigators whose surveillance Defendants will not use for any purpose at trial.[14]  Second, although it appears unlikely, if any item to be produced reveals (a) a confidential communication between a defense client and his or her attorney or attorney's representative, *JM through Foley*, 2009 WL 10708126 at *5, or (b) the mental impressions, conclusions, opinions, or legal theories of an attorney or other party representative, Fed. R. Civ. P. 26(b)(3)(B), then FedEx Ground may redact the privileged communication or opinion work product and submit a privilege log regarding the redaction that complies with Rule 26(b).[15]

With respect to the remaining portions of Interrogatory No. 1, the Court finds that the portions seeking surveillance of anyone other than Plaintiff, and a description of the "actions and activities surveilled," are vague, potentially overbroad and unduly burdensome, and seek information that is disproportionate to the needs of the case and for which Plaintiff has failed to show a substantial need.  Fed. R. Civ. P. 26(b)(1), (3).  Surveillance of Plaintiff's family members

---

[13] In this regard, the Court notes that, though Plaintiff directed the discovery requests at issue to FedEx Ground, the same attorneys represent all of the Defendants in this matter.

[14] However, if Defendants may use *any* materials or testimony from a particular investigator at trial, then Defendants must produce *all* of the materials and information regarding that investigator that the Court has ordered to be produced, including materials they do not intend to use, to provide Plaintiff with reasonably complete information about the investigator's surveillance.

[15] Rule 26(b) provides in pertinent part that a party who "withholds information otherwise discoverable by claiming that the information is privileged" or protected work product must "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).

could, at most, be used to impeach nonparty witnesses regarding damages.[16]  Such evidence is collateral and does not justify requiring FedEx Ground to disclose its work product.  And, there is no need to set FedEx Ground to the amorphous task of describing Plaintiff's actions while under surveillance, because Plaintiff can work this out for himself using the dates, locations, videos, and photos to be produced. The Court will therefore deny Plaintiff's request for an order compelling FedEx Ground to answer these portions of Interrogatory No. 1.

Similarly, the Court will deny Plaintiff's request for an order compelling FedEx Ground to respond to the portions of Interrogatory No. 1 seeking information about surveillance compensation and "reports," as well as Requests Nos. 5 through 7, which seek "time logs, bills or invoices" and "notes and memos from" and "contracts and communications with" McDonald Investigation and Consulting.  (Doc. 115-1 at 5-6; Doc. 115-2 at 1.)  These requests also seek documents disproportionate to the needs of the case and for which Plaintiff has failed to show a substantial need.  Fed. R. Civ. P. 26(b)(1), (3); *Roa*, 2014 WL 695961 at *5.  Plaintiff has "not presented any legal authority demonstrating [that he is] entitled to these documents or why in fairness they ought to be considered along with the video and photographic evidence."[17]  *Roa*, 2014 WL 695961 at *5; *see also, e.g., Harrington*, 2011 WL 6945185 at *3 (plaintiff failed to demonstrate substantial need for surveillance reports); *Papadakis*, 233 F.R.D. at 228-29 (granting motion for protective order with respect to surveillance reports).  In addition, "much of this information is likely to contain opinion work product and reveal the thought processes of counsel

---

[16] The only family member listed as a potential witness in the parties' Joint Status Report and Provisional Discovery Plan is Plaintiff's spouse, who may have knowledge regarding "Plaintiff's condition before and after the incident, as well as the impact of his resulting injuries."  (Doc. 16 at 4.)

[17] Plaintiff does argue that he needs information and materials regarding compensation to show the investigators' bias. (Doc. 125 at 6.)  However, the fact that Defendants compensated their investigators for surveilling Plaintiff is obvious and Plaintiff has failed to adequately explain why he needs more detailed information about such compensation at this time.

or the investigator," and is thus "entitled to near absolute protection." *Roa*, 2014 WL 695961 at *5.

Turning, at last, to Defendants' Motion to Quash, the Court will allow Plaintiff to depose Mr. McDonald if, as it appears, he surveilled Plaintiff and if Defendants may use his testimony, photos, or videos for any purpose—including impeachment—at trial.[18]  However, the Court will limit Plaintiff to deposing Mr. McDonald regarding the authenticity of any photos and videos of Plaintiff that he took or recorded.  Moreover,

> the Court cautions [P]laintiff['s counsel] to carefully craft their deposition questions so as not to elicit disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

*Roa*, 2014 WL 695961 at *5 (quotation marks omitted).  The Court expects Plaintiff's counsel to strictly adhere to the limitations on Mr. McDonald's deposition described in this Order.

Regarding the materials Plaintiff's Subpoena commands Mr. McDonald to produce, FedEx Ground should work with Mr. McDonald to ensure that Plaintiff receives any photos, videos, slides, motion pictures, or "[d]ash cam footage" of Plaintiff in Mr. McDonald's possession no later than seven (7) days before his deposition, whether in response to Request No. 4 or the Subpoena. (Doc. 113 at 6.)  However, the Court will bar enforcement of the Subpoena with respect to the remaining materials it lists, *i.e.*, reports, witness statements, "[e]vidence collected,"[19] communications, and correspondence.  (*Id.*)  As previously discussed, Plaintiff has failed to show a substantial need for these kinds of items; and, they are "likely to contain opinion work product

---

[18] The Court notes that Mr. McDonald appears to be the only investigator whose deposition Plaintiff timely noticed for a date before discovery closed.

[19] This category of documents is vague, overbroad, and unduly burdensome, potentially encompassing discoverable items such as photos and videos but also work product for which Plaintiff has failed to show a substantial need, such as documentation of Mr. McDonald's witness interviews.  *See Am. Auto. Ins. Co.*, 2016 WL 7395219 at *4 ("The weight of authority . . . suggests that discovery that seeks the identity of persons with knowledge is permissible, [but] discovery that seeks the identity of persons whom counsel has interviewed is not.").

and reveal the thought processes of counsel or the investigator," and to that extent are "entitled to near absolute protection." *Roa*, 2014 WL 695961 at *5.

## C.     Apportionment of Expenses

Finally, because the Court has granted both sides' Motions in part and denied them in part, and because both sides' positions were substantially justified in part, the Court declines to apportion the reasonable expenses for either Motion.  Fed. R. Civ. P. 37(a)(5)(C) ("If [a motion to compel] is granted in part and denied in part, the court . . . *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.") (emphasis added); *see also* Fed. R. Civ. P. 26(c)(3) ("Rule 37(a)(5) applies to the award of expenses" on a motion for protective order).

## IV.  Conclusion

For the reasons discussed herein, it is hereby ORDERED as follows:

1.     Plaintiff's Motion to Compel Defendant FedEx Ground Package System's Responses to Plaintiff's Fifth Set of Interrogatories and Fourth Set of Requests for Production (Doc. 115) is GRANTED IN PART and DENIED IN PART.

a.     The Motion to Compel is GRANTED in that, within **twenty-one (21) days** of entry of this Order, Defendant FedEx Ground Package System shall respond or supplement its responses to the following discovery requests or portions thereof:

(1)     The portions of Interrogatory No. 1 asking FedEx Ground to identify all persons who have surveilled Plaintiff on its behalf and all "photographs, slides, videos, or motion pictures depicting Plaintiff," and to state the dates and locations of such surveillance, subject to paragraph 3, *infra*;

(2)     The portions of Interrogatory No. 2 seeking the date, location, and a general description of, and the case caption of any subsequent litigation arising out

of, responsive accidents, except that FedEx Ground may limit its answer to responsive accidents that:  (a) a governmental agency or FedEx Ground deemed preventable; and, (b) involved a vehicle not equipped with a backup camera or a vehicle not equipped with a backup alarm;

(3)     The portions of Requests for Production Nos. 1 through 3 seeking law enforcement or government reports, DOT submissions, preventability determinations, and information and documents required by 49 C.F.R. § 390.15 to be included in the Accident Register, except for drivers' names and accident reports required by insurers, regarding accidents responsive to Interrogatory No. 2 as narrowed herein; and,

(4)     Request for Production No. 4, subject to paragraph 3, *infra*.

b.     In all other respects, the Motion to Compel is DENIED;

2.     Defendants' Motion to Quash Subpoena *Duces Tecum* or, in the Alternative, to Enter a Protective Order (Doc. 116) is GRANTED IN PART and DENIED IN PART.

a.     The Motion to Quash is GRANTED in that Plaintiff is barred from enforcing the portions of the Subpoena *Duces Tecum* (Doc. 113) he served on Jeff McDonald commanding Mr. McDonald to produce any documents or items regarding surveillance of anyone other than Plaintiff, and any reports, witness statements, evidence (except as required by paragraph 2.b., *infra*), communications, or correspondence.

b.     The Motion to Quash is GRANTED IN PART and DENIED IN PART in that, within **thirty (30) days** of entry of this Order, Defendants shall make Mr. McDonald available to be deposed, but only regarding the authenticity of the photos

and videos he took or recorded, and shall ensure that Plaintiff has received any such photos and videos no later than **seven (7) days** before the deposition, unless the deadline set in paragraph 1.a., *supra*, requires production earlier.

c.      In all other respects, the Motion to Quash is DENIED, subject to paragraph 3, *infra*; and,

3.      If, within **fourteen (14) days** of entry of this Order, Defendants affirm in writing that they will not use an investigator's testimony, photos, or videos for any purpose at trial, then they need not produce any information regarding, or materials from that investigator.  Further, if Defendants affirm in writing that they will not use Mr. McDonald's testimony, photos, or videos for any purpose at trial (or that Mr. McDonald did not surveil Plaintiff or did not take any photos or videos during his surveillance of Plaintiff), Defendants need not make Mr. McDonald available to be deposed.

IT IS SO ORDERED.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE